**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

WILLIE B. WHITE, *et al.*,                )
                                          )
      Plaintiffs,                      )
                                          )
   vs.                                   )     Case No. 4:25-cv-00031-MTS
                                          )
DIRELL ALEXANDER, *et al.*,               )
                                          )
      Defendants.                      )

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs Willie B. White and Matthew Lawler allege that, while awaiting trial on criminal charges, employees of the St. Louis City Justice Center kept them in deplorably unsanitary conditions.  Plaintiffs allege that Defendants kept them, for eleven days, in a holding cell that lacked a working toilet.  Plaintiffs were but two of the thirteen individuals kept in this toilet-less cell designed for only nine people.  The predictable result was the formation of a literal pool of human waste.  Without enough bunks, Plaintiffs allege that they had to sleep on mats in this putrid pool of urine, feces, and vomit.  And they allege employees required them to eat in this cell, after passing Plaintiffs' meals through a slot covered in the filth.

Plaintiffs filed this action last year against the City of St. Louis and eight unnamed, Doe City employees under 42 U.S.C. § 1983.  In response, the City sought to dismiss the case against it, declaring, incredibly, that the alleged conditions were within the precepts of the Constitution. Doc. [10] at 13 (arguing Plaintiffs "failed to allege facts which demonstrate that [what] they allegedly experienced rose to the level of a

constitutional violation").  The City also argued that Plaintiffs failed to plead facts that established the City itself was liable.  *See Monell v. Dep't of Social Services of the City of N.Y.*, 436 U.S. 658 (1978).  On this latter point—and only this latter point—the City was correct.  *See Romero v. City of Lansing*, 159 F.4th 1002, 1015 (6th Cir. 2025) ("Even at the motion-to-dismiss stage, [a plaintiff] must plead specific facts beyond speculation and bare recitation of the standard for municipal liability.").  For that reason, the Court granted the City's Motion to Dismiss but provided Plaintiffs with forty-five days to file an amended complaint, Doc. [17] (2025 WL 1360703), which Plaintiffs timely filed, Doc. [20].

In their Amended Complaint, Plaintiffs no longer name the City as a Defendant. Instead, based on discovery obtained from the City, they name as Defendants every City employee working at the Justice Center who was on duty at any time between May 19 and May 30, 2023, and who had "duties associated" with the cell where Plaintiffs were held.  *Id.* ¶ 3.  In total, Plaintiffs name twenty-seven Defendants: fourteen correctional officers, four lieutenants, eight captains, and one major.  *Id.* ¶¶ 4–7.  The St. Louis City Counselor's Office entered its appearance for most of these Defendants and moved to dismiss the Amended Complaint.[1]  Doc. [30].  Like the original Complaint, the Amended Complaint paints a nauseating picture of the squalid conditions in which Plaintiffs were

---

[1] The moving Defendants are Direll Alexander, Bruce Borders, Raymond Brown, Nicole Burt, Matthew Caldwell, Lorenzo Chapman, Lenita Cherry, Pamela Clark, Renee Cooper, Stephan Demerath, Marilyn Earvin, Christopher Ensign, Ann Flint, Javan Fowkles, Tonya Harry, Pamela Hemphill, Ronnie Johnson, LeRonald Loper, Anita Nolan, Nachante Ursery, Frederick Watson, LeeRoy Wilborn, Anthony Williams, and Keith Williams.

kept.  Nevertheless, like the original Motion to Dismiss, the present Motion also is well taken.

The Moving Defendants rightly point out that the Amended Complaint improperly groups the Defendants together, making allegations against them only collectively. Indeed, Plaintiffs fail to plead a single fact tied to any specific, named individual.[2]  But vicarious liability is "inapplicable" to § 1983 suits. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.*  Plaintiffs therefore needed to allege "facts that demonstrate what *each* defendant did to violate" the Eighth Amendment.  *See Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 899 (6th Cir. 2019).

The Supreme Court has explained that to violate the Eighth Amendment by denying an inmate humane conditions of confinement, a prison official must have known of and disregarded an excessive risk to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Because the Amended Complaint alleges no facts about any specific Defendant, it does not plausibly allege that any particular Defendant both recognized and disregarded the risk, even though the allegations show that some among the twenty-seven Defendants may well have done so.  *See id.*  While Plaintiffs seem to try

---

[2] The lone allegation purporting to attribute conduct to a specific individual asserts only that "one of the" defendants "misrepresented that he would provide a mop." Doc. [20] ¶ 14. Beyond that, Plaintiffs frame their allegations in the passive voice, obscuring which Defendant supposedly engaged in the conduct. *See, e.g., id.* ¶ 9 (alleging Plaintiffs "were herded into a 'bullpen'"); *id.* ¶ 15 (alleging items became covered in filth when they "were passed through [a] 'chuck hole'"); *id.* ¶ 18 (alleging the water "was shut off").  *See also* Mark Cooney, *Style Is Substance: Collected Cases Showing Why It Matters*, 14 Scribes J. Legal Writing 1, 22 (2012) (explaining that "when legal writers lapse into the passive voice, they sometimes forget to identify the actor altogether," which "lead[s] to ambiguity").

to impute knowledge to all Defendants since they "were on duty at some point" during those eleven days, Doc. [20] ¶ 3, such "imputed or collective knowledge" does not suffice for a claim of deliberate indifference under the Eighth Amendment. *See Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).[3]

* * *

While "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement," *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998), "*Farmer* requires a finding of actual knowledge on the part of prison officials in order to support an Eighth Amendment violation," *Jensen v. Clarke*, 94 F.3d 1191, 1195 (8th Cir. 1996). Because of Plaintiffs' exclusive use of group pleading, they have not shown that any particular Defendant had actual knowledge of the squalid conditions Plaintiffs faced and disregarded it. For that reason, the Court will grant Defendants' Motion but will provide Plaintiffs with leave to file a Second Amended Complaint. In the Second Amended Complaint, Plaintiffs must plead facts against specific defendants. *See Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982) (explaining that plaintiffs "must ferret out the officials directly responsible for the alleged constitutional violation" and recognizing that, because of this requirement, "[m]any plaintiffs file complaints naming 'unknown' officials as defendants" before they have identified them); *see also Roberts v. Dillon*, 15

---

[3] Because "not every overflowed toilet in a prison amounts to a constitutional violation," *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996), how much a Defendant knew and at what stage in the process he knew it is crucial to establishing a specific Defendant's liability. *See Taylor v. Riojas*, 592 U.S. 7, 13 (2020) (per curiam) (Alito, J., concurring in the judgment) ("There are degrees of filth, ranging from conditions that are simply unpleasant to conditions that pose a grave health risk, and the concept of 'a few days' is also imprecise.").

F.3d 113, 115 (8th Cir. 1994) (per curiam) (noting that if the appellant was "unable to ascertain" a deputy sheriff's identity, "she could have sued him as a 'John Doe'").[4]

Accordingly,

**IT IS HEREBY ORDERED** that the Moving Defendants' Motion to Dismiss, Doc. [30], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs may file a Second Amended Complaint consistent with this Memorandum and Order no later than **Friday**, **April 24, 2026**. If Plaintiffs fail to file a Second Amended Complaint, the Court will dismiss this action.[5]

Dated this 11th day of March 2026.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[4] But even allegations against Doe defendants cannot be lumped together. *See Woods v. City of St. Louis*, 4:24-cv-0868-MTS, 2025 WL 2096679, at *3 (E.D. Mo. July 25, 2025) (citing *Storm v. Warden*, 2:25-cv-1483-AC, 2025 WL 1695034, at *3 (E.D. Cal. June 17, 2025)); *Partridge v. Dzurenda*, 2:19-cv-1355-RFB, 2020 WL 4193470, at *3 (D. Nev. July 20, 2020).

[5] Alternatively, Plaintiffs may inform the Court that they choose to stand on their First Amended Complaint, and the Court will dismiss this action. *See Mo. ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 956 (8th Cir. 2001) (noting a plaintiff "may stand on his complaint and appeal its dismissal to the court of appeals"); *cf. Britt v. DeJoy*, 45 F.4th 790, 797 (4th Cir. 2022) (en banc) ("[A] plaintiff who wishes to stand on her complaint should request that the district court enter a final decision dismissing her case without leave to amend."). Plaintiffs also still maintain the ability to unilaterally dismiss this action without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(A)(i).