**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIE B. WHITE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:25-cv-00031-MTS |
| | ) | |
| DIRELL ALEXANDER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim. Doc. [39]. Defendants allege that Plaintiffs' Second Amended Complaint, Doc. [37], does not plead facts establishing Defendants' knowledge of Plaintiffs' inhumane cell conditions, and that qualified immunity precludes Plaintiffs' claims. Doc. [40] at 4–12. However, because Plaintiffs' allegations are sufficient to support an inference of knowledge, and because Plaintiffs' alleged facts overcome qualified immunity, this Court will deny Defendants' Motion.

## I. Facts

For purposes of this Motion to Dismiss, the Court presumes all properly alleged facts in Plaintiffs' Second Amended Complaint, Doc. [37], to be true. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). And the alleged facts are nothing short of horrifying.

Plaintiffs Willie White and Matthew Lawler ("Plaintiffs") bring this action against twenty-seven Defendant Employees ("Defendants") of the St. Louis City Justice Center ("CJC"). Doc. [37] ¶¶ 4–7. Fourteen Defendants worked as correctional officers, four worked as lieutenants, eight worked as captains, and one served as Major for the facility. *Id.* Plaintiffs

were housed in the CJC from May 19 to May 30, 2023, as pre-trial detainees, and all Defendants worked near Plaintiffs' cell at some point during that period. *Id.* ¶¶ 3, 35. Defendants placed Plaintiffs in the "bullpen," a large cell fit for nine inmates, but which housed fifteen at the time. *Id.* Due to the overcrowding, officers provided Plaintiffs with thin mattresses to sleep on the floor. *Id.* ¶ 41.

At some point during Plaintiffs' stay, the cell toilet backed up and overflowed, spilling inmate urine, vomit, and feces across the floor of the cell. *Id.* ¶¶ 36–40. Defendant alleges, upon information and belief, that the toilet backed up because some of the supervisory Defendants directed correctional officers to shut off the water to the bullpen as a collective punishment. All Defendants worked around Plaintiffs' cell and became aware of the situation, but did not fix the toilet, clean the cell, or do anything to address the issue. *Id.* ¶¶ 8–33.

Over the course of eleven days, human waste filled the cell as inmates relieved themselves. *Id.* ¶ 41. For Plaintiffs, who had to sleep on the floor, the waste soaked into their mattresses, pillows, blankets, and even clothes. *Id.* In response, Defendants refused to even open the door to the cell, forcing inmates to throw their clothes through a "chuck hole," contaminating the hole in the process. *Id.* ¶ 43. Unfortunately, this chuck hole was how jail staff also delivered food; so, inmates refused to eat for days out of fear that the food was contaminated. *Id.* ¶¶ 43, 45–47. The combined filth and squalor gave Plaintiff Lawler a staph infection. *Id.* ¶ 47.

Plaintiffs brought this action under 42 U.S.C. § 1983, alleging conditions of confinement constituting punishment in violation of the Fourteenth Amendment. *Id.* ¶¶ 58–68. For the third time, Defendants have moved to dismiss on grounds of failure to state a claim and qualified immunity. Doc. [39].

## II. Legal Standard

a. Rule 12(b)(6) Motion

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the Court assumes a complaint's factual allegations are true and makes all reasonable inferences in favor of the nonmoving party, but the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick*, 944 F.3d at 717. To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility of a complaint turns on whether the facts alleged allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it

has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

b. Section 1983 and the Fourteenth Amendment to the U.S. Constitution

The Fourteenth Amendment to the United States Constitution entitles pre-trial detainees to "reasonably adequate sanitation [and] personal hygiene," and prohibits "conditions of confinement [that] amount to punishment." *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013) (quoting *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012)); *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). There are "two ways to determine whether conditions rise to the level of punishment" under the Fourteenth Amendment. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979)). "A plaintiff could show that the conditions were intentionally punitive. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* (internal citations omitted).

The Eighth Amendment to the U.S. Constitution forbids "cruel and unusual punishment." U.S. Const. amend. VIII. Since it limits only *cruel and unusual* punishment, a court's analysis of a pre-trial detainee's conditions of confinement "cannot turn on [that] standard." *Stearns*, 957 F.3d at 909. That said, the United States Court of Appeals for the Eighth Circuit has made clear that Fourteenth Amendment protections for pre-trial detainees offer "'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment.'" *Stickley*, 703 F.3d at 423 (quoting *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003)). Thus, "an action that violates the Eighth Amendment necessarily violates the Fourteenth Amendment." *Jones v. City of St. Louis*, 183 F.4th 638, 645 (8th Cir.

2026); *accord Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988) (per curiam). In this way, looking to Eighth Amendment cases can inform the Fourteenth Amendment analysis. *See Fisher v. Lovejoy*, 414 F.3d 659, 662 n.1 (7th Cir. 2005) (explaining that "in cases involving pre-trial detainees, we commonly consult the 'analogous standards of Eighth Amendment jurisprudence'").

The Supreme Court has ruled that the Eighth Amendment imposes a duty on prison officials to provide inmates "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Further, poor, inhumane, and risky prison conditions may violate the Eighth Amendment if the conditions are sufficiently serious and prison officials acted with "deliberate indifference" regarding the conditions. *See Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (establishing that poor prison conditions can violate the Eighth Amendment); *Farmer v. Brennan*, 511 U.S. 825, 834, 841–42 (1994) (establishing the standard for deliberate indifference). In particular, the Eighth Circuit requires that unsanitary conditions "produce[] the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 957 (8th Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). While deliberate indifference is a subjective state of mind, courts can infer deliberate indifference through circumstantial evidence, including "the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

If a state official violates the Fourteenth Amendment, the victim can sue under 42 U.S.C. § 1983, which provides that any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

c. Qualified Immunity

Even if a court finds that a defendant violated the Constitution, executive officers have a defense of qualified immunity to § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Qualified immunity shields officials from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam) (internal quotations omitted). A right is "clearly established" when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotations omitted). Though there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 580 U.S. at 79 (internal quotations omitted). It is not enough that a rule merely is "suggested by then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Rather, the "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

**III. Discussion**

a. Fourteenth Amendment and Rule 8(a).

It is difficult to dispute that the conditions in the "bullpen" were sufficiently serious to warrant a Fourteenth Amendment violation. "[R]easonably adequate sanitation and the ability to eliminate and dispose of one's bodily wastes without unreasonably risking contamination are basic identifiable human needs of a prisoner . . . ." *Whitnack*, 16 F.3d at 958. Moreover,

"courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste." *Fruit v. Norris*, 905 F.2d 1147, 1149, 1151 (8th Cir. 1990). It is of course true that not every placement of a prisoner in an unclean cell violates the Fourteenth Amendment, *see Whitnack*, 16 F.3d at 958, but courts in this Circuit have found constitutional violations in situations less egregious than the facts in this case. *See Fant v. City of Ferguson*, 107 F. Supp. 3d 1016, 1036 (E.D. Mo. 2015) (finding a constitutional violation when pre-trial detainees "were forced to sleep on the floor in dirty cells with blood, mucus, and feces . . . ."); *see also Fruit*, 905 F.2d at 1151 (finding sufficient evidence of a prima facie constitutional violation when a prison "forc[ed] inmates to work in a shower of human excrement without protective clothing and equipment . . . .").

Plaintiffs' Amended Complaint asserts that each Defendant worked in the City Justice Center at some point from May 19 to May 30, 2023, that each worked in or around the "bullpen" area, and that each had first-hand knowledge of the inhumane conditions but refused to rectify them. Doc. [37] ¶¶ 3–33. Defendants demand more; specifically, they demand that Plaintiffs "distinguish the actions" of each defendant from each other and specifically allege what each Defendant knew and did. Doc. [40] at 4–5. But Plaintiffs plead enough. Not only do Plaintiffs allege knowledge, but they also combine that allegation with (1) the allegation that all Defendants worked near the "bullpen" during the period in question, and (2) the wretched, horrific conditions of the bullpen itself. Doc. [37] ¶¶ 3, 35–50. These three allegations, put together, allow a court to infer that the purpose of each Defendant's action (and inaction) was to punish Plaintiffs. *Stearns*, 957 F.3d at 907. It is also enough to allow a court to infer the deliberate indifference on the part of each Defendant. *See Farmer*, 511 U.S. at 842.

Indeed, it bears repeating how appalling the conditions in the bullpen were alleged to be. According to the Second Amended Complaint, a toilet clog resulted in inmate urine, vomit, and feces overflowing onto the floor of a locked cell and pooling there for over eleven days. Doc. [37] ¶¶ 36, 40. This human refuse soaked into the inmates' clothes, mattresses, pillows, blankets, and even food. *Id.* ¶¶ 41, 43, 45. If Defendants worked near the bullpen during this time, as we must accept at the Motion to Dismiss stage, then the question is not whether they knew; the question is: how could they not have known? The Court can easily infer that the putrid smell alone would have been unable to mask. The cell would have been very visibly filthy. And anyone kept in such conditions for any amount of time—let alone eleven days—would have repeatedly voiced complaints to anyone in earshot.

These facts are sufficient to state a violation of the Eighth Amendment, and therefore certainly state a violation of the Fourteenth Amendment under Rule 8(a). Defendants are not entitled to dismissal on this ground.

b. Qualified Immunity

Defendants are also not entitled to dismissal on qualified immunity grounds. Plaintiffs do not need a case directly on point to overcome qualified immunity based on these conditions because there is an "obvious clarity" that these specific conditions would violate the Constitution. *See Rokusek v. Jansen*, 899 F.3d 544, 548 (8th Cir. 2018). In any event, there is such a case: *Taylor v. Riojas*, 592 U.S. 7 (2020).

Indeed, the parallels between this case and *Taylor* are striking. In *Taylor*, defendants in the Texas Department of Criminal Justice held plaintiff Taylor in a cell covered in "massive amounts of feces." 592 U.S. at 7 (quoting *Taylor v. Stevens*, 946 F.3d 211, 218 (5th Cir. 2019)) (internal quotations omitted). Taylor not only slept in the sewage but refused to eat the feces-

contaminated food and drink the water for days. *Id.* On these facts, the U.S. Supreme Court granted Taylor's petition for a writ of certiorari, summarily reversed the grant of qualified immunity, and found that Taylor's conditions violated the Constitution. *Id.* at 9. Therefore, qualified immunity does not require dismissal of this case at this stage.

## IV. Conclusion

Plaintiffs' Second Amended Complaint, Doc. [37], alleges sufficient facts to both state a claim under Federal Rule of Civil Procedure 8 and overcome qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Doc. [39], is **DENIED**. Defendants shall have the prescribed time to file their Answer(s) to the Second Amended Complaint.

Dated this 13th day of October 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE